## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.) No. 22-0344 (Harrison County 14-F-213-1)**

**Shane Andrew Miller,**
**Defendant Below, Petitioner**

## MEMORANDUM DECISION

Petitioner Shane Andrew Miller[1] appeals the Circuit Court of Harrison County's April 4, 2022, order sentencing him to life with mercy for first-degree murder, and consecutive two to five year terms for conspiracy to commit first-degree murder.[2] Upon our review, we determine oral argument is unnecessary and that a memorandum decision is appropriate. *See* W. Va. R. App. P. 21(c).

In his sole assignment of error, petitioner argues that the circuit court erred in the admission of flight evidence during his trial for the first-degree murder of Darrell Golden. At trial, the State introduced evidence that petitioner burglarized the Bluebird store in Clarksburg, West Virginia, between March 12, 2014, and March 13, 2014. Petitioner admitted his involvement in the burglary to Golden and quickly became afraid Golden would "tell on him." Petitioner informed his girlfriend Tracy Boals that "Darrell had to die, because [petitioner] didn't want to get told on." On March 16, 2014, petitioner and Boals had a chance encounter with Golden and offered to take him "sightseeing." Petitioner then drove Golden to a remote location, hit him in the head with a bottle, and drowned him in a pond. On March 17, 2014, Golden was reported missing.

On March 20, 2014, a citizen found a body, later identified as Golden, in the pond. Lt. McCarty and Sgt. Waybright of the Harrison County Sheriff's Department visited petitioner at his parents' home and asked if he knew what happened to Golden. Petitioner denied any knowledge of the murder, but Boals testified that petitioner was distraught after the officers left. Petitioner discussed his options with Boals, and they agreed "to go on the run together," but they had no definite destination in mind. Petitioner was on probation for an unrelated offense, and on March 24, 2014, Lt. Jason Snyder of the Clarksburg Police Department interviewed petitioner at the

---

[1] Petitioner appears by counsel Jeremy B. Cooper. Respondent appears by Attorney General Patrick Morrisey and Assistant Attorney General William E. Longwell.

[2] The circuit court increased petitioner's minimum sentence for conspiracy pursuant to a recidivist enhancement. *See* W. Va. Code § 61-11-18.

1

Harrison County probation office about the burglary of the Bluebird store. Lt. Snyder testified that, during this interview, petitioner complained that "some detectives were trying to pin a murder on him."

Petitioner's brother Robert Miller testified that petitioner admitted to killing Golden because they were "supposed to break into the Bluebird, and Darrell didn't do it. Darrell backed out, and the next day told on [petitioner]." Robert called law enforcement and reported that petitioner confessed to killing Golden. Robert later told petitioner the police were going to arrest him for Golden's murder. Robert attempted to help his brother avoid arrest by driving him to a store where petitioner purchased blonde hair dye to disguise his appearance and loaning petitioner his car so he could visit their brother Chris in New Jersey. Petitioner testified that he called his brother Chris "and told him that [he] was coming to New Jersey to stay with him for a few days." Boals testified that she and petitioner drove to New Jersey to speak with Chris, but only stayed for "a couple hours" before driving back to West Virginia. After returning to Harrison County, the couple planned to "take a tent and go pitch it up in the woods and stay out there." Petitioner and Boals were eventually arrested on April 2, 2014, and both were charged with first-degree murder and conspiracy to commit first-degree murder.

The State filed a pretrial notice of its intention to present evidence of petitioner's flight, alleging that petitioner changed his hair color and hid in the woods to avoid arrest for Golden's murder. The State's motion did not mention petitioner's flight to New Jersey, and it was not discussed during the first pretrial hearing on this issue. But petitioner's flight to New Jersey was discussed at a hearing that occurred on the morning before trial. At this hearing, petitioner's counsel complained the evidence of petitioner's flight to New Jersey was not included in the State's notice or mentioned at the first hearing. The prosecutor replied that she was not aware of petitioner's brief flight to New Jersey until she interviewed Boals during trial preparation. The prosecutor further stated that petitioner should not be surprised by evidence of his flight to New Jersey, because his brother Robert referred to it in his statement to police, which was disclosed to petitioner during pretrial discovery.

Petitioner did not claim to be unaware that he was a suspect in a murder investigation, and no plausible, exculpatory reason for petitioner's absence from the jurisdiction is apparent from the record. Rather, petitioner merely claimed that no arrest warrant had been issued when he went to New Jersey. Although petitioner claims to have been surprised by the State's evidence of petitioner's flight to New Jersey, he did not ask for a continuance for additional time to gather evidence to rebut the State's theory of flight. At the conclusion of the second pretrial hearing on the admissibility of flight evidence, the circuit court granted the State's motion, finding the State met its "burden of indicating a guilty conscience or knowledge." Petitioner was thereafter convicted by a jury of first-degree murder and conspiracy to commit first-degree murder and sentenced as set forth above, and he appeals the court's April 4, 2022, order memorializing that sentence.

On appeal, petitioner argues the circuit court erred when it admitted evidence of petitioner's flight to New Jersey because the State did not provide notice of its intention to admit this evidence until the morning of trial. "A trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard." Syl. Pt. 4,

2

*State v. Rodoussakis*, 204 W. Va. 58, 511 S.E.2d 469 (1998). Our law governing the admission of flight evidence is well-settled. This Court has held as follows:

> In certain circumstances evidence of the flight of the defendant will be admissible in a criminal trial as evidence of the defendant's guilty conscience or knowledge. Prior to admitting such evidence, however, the trial judge, upon request by either the State or the defendant, should hold an in camera hearing to determine whether the probative value of such evidence outweighs its possible prejudicial effect.

Syl. Pt. 6, *State v. Payne*, 167 W. Va. 252, 280 S.E.2d 72 (1981); *see* W. Va. R. Evid. 403. We have further stated that

> [i]n considering whether the facts and circumstances of the case indicate a guilty conscience or knowledge, the trial judge should consider whether the defendant was aware of the charges pending against him at the time he fled; *was aware that he was a suspect at the time he fled*; or fled the scene of a crime under circumstances that would indicate a guilty conscience or knowledge; or otherwise fled under circumstances such that would indicate a desire to escape or avoid prosecution due to a guilty conscience or knowledge.

*Payne*, 167 W. Va. at 267, 280 S.E.2d at 81 (emphasis added). There is ample evidence in the record to support an inference that petitioner fled to New Jersey because he wished to avoid prosecution. Prior to his flight, petitioner had been questioned by police about the robbery, and he told Lt. Snyder that "some detectives were trying to pin a murder on him." After being questioned by police about the murder, petitioner and Boals developed a plan to "go on the run" and "take off to New Jersey." At trial, petitioner admitted that he left for New Jersey after his brother Robert told him he would be arrested. And in furtherance of his intended flight, petitioner called his brother Chris "and told him that [he] was coming to New Jersey to stay with him for a few days." These circumstances indicate petitioner's awareness that he was a suspect in a murder investigation when he fled Harrison County.

We reject petitioner's contention that the State's disclosure of its intention to introduce evidence of petitioner's flight to New Jersey, on the morning of trial, amounted to a "trial by ambush." While petitioner complains that he lacked notice of the State's intention to offer evidence of his flight to New Jersey, he did not ask for a continuance to gather evidence that would rebut the State's theory of flight. *See, e.g.*, *United States v. Skoczen*, 405 F.3d 537, 548 (7th Cir. 2005) (holding that admission of flight evidence without pretrial notice was not an abuse of discretion).

Our decision in *Payne* is dispositive. In this case, the circuit court conducted an in camera hearing wherein petitioner was permitted to explain his flight to New Jersey. Based on the circumstances of this case, it is clear petitioner was aware that he was a suspect in a murder investigation when he fled to New Jersey. The circuit court meticulously followed the holding and reasoning of *Payne*, and its decision to admit the evidence of petitioner's flight was "protected by the parameters of sound discretion[.]" *State v. Meade*, 196 W. Va. 551, 558, 474 S.E.2d 481, 488 (1996) (citation omitted).

For the reasons stated above, this Court finds no error in the admission of flight evidence, and affirms the April 4, 2022, final order of the Circuit Court of Harrison County.

Affirmed.

**ISSUED:** February 20, 2024

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn